United States District Court
Southern District of Texas
**ENTERED**
November 03, 2015
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES, | § | |
|   Plaintiff/Respondent, | § | |
| | § | |
| v. | § | **Cr. No. C-13-562-1** |
| | § | |
| MARGARITO BENITEZ-SALAZAR, | § | |
|   Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Margarito Benitez-Salazar's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 21).

## I.  BACKGROUND AND CLAIMS

In June 2013, Benitez-Salazar was arrested for illegal reentry. He was appointed counsel and pled guilty in August 2013. Benitez-Salazar was sentenced to 58 months in the Bureau of Prisons (BOP) and ordered to pay a $100 special assessment. In parallel proceedings, Benitez-Salazar's supervised release was revoked in previous cases from 2004 (alien smuggling) and 2008 (illegal reentry). Judgment of conviction in the present case was entered on the docket on November 27, 2013. D.E. 19. Benitez-Salazar did not appeal. He filed the pending motion in August 2015.[1]

## II.  MOVANT'S CLAIMS

Benitez-Salazar claims that he is entitled to a reduced sentence because: (1) he voluntarily waived his removal rights, (2) his conditions of confinement are unduly harsh, and (3) he will be faced with rebuilding his life in a less-developed country after deportation. He also claims that his

---

[1]  Benitez-Salazar is entitled to application of the mailbox rule, but his motion does not include a certificate of service and the envelope does not bear a legible postmark. Fed. R. App. P. 4(c). The motion was received by the Clerk on August 24, 2015.

1

counsel did not raise these claims, which the Court construes to be a claim of ineffective assistance of counsel.

### III.   ANALYSIS

**A.     Statute of Limitations**

A motion made under § 2255 is subject to a one-year statute of limitations, which, in most cases, begins to run when the judgment becomes final.[2] 28 U.S.C. § 2255(f). The Fifth Circuit and the Supreme Court have held that a judgment becomes final when the applicable period for seeking review of a final conviction has expired. *Clay v. United States*, 537 U.S. 522, 525 (2003); *United States v. Gamble*, 208 F.3d 536, 536-37 (5th Cir. 2000) (per curiam).

Benitez-Salazar's judgment became final on December 11, 2013–fourteen days after judgment was entered on the docket. *See* FED. R. APP. P. 4(b)(1). He was required to file his motion to vacate no later than one year from that date. Because there is no evidence of the date Benitez'Salazar's motion was placed in the prison mail, the Court finds that it was filed on the date it was received, August 24, 2015. Benitez-Salazar's motion is more than eight months too late.

Although the limitations period for § 2255 motions is not considered a jurisdictional bar, it is subject to equitable tolling "only 'in rare and exceptional cases.'" *United States v. Riggs*, 314 F.3d

---

[2] The statute provides that the limitations period shall run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

796, 799 (5th Cir. 2002) (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)). The party seeking equitable tolling bears the burden of demonstrating that tolling is appropriate. *United States v. Petty*, 530 F.3d 361, 365 (5th Cir. 2008). To satisfy his burden, Benitez-Salazar must show that 1) he has diligently pursued his rights, and 2) some extraordinary circumstance stood in his way. *Id.*

The present motion was filed both in the 2004 case and in this one. In addressing the motion in Cause No. 2:04-CR-419-4, the Court noted that Benitez-Salazar filed a previous § 2255 motion dated November 2014, and in that case the present motion was second or successive. The November 2014 motion in 2:04-CR-419-4 (D.E. 119) referenced both the 2004 cause number and the cause number in this case, but was only docketed in the 2004 case. The Court finds that equitable tolling applies because the November 2014 motion was timely filed, albeit not docketed in this case. The November 2014 motion (D.E. 22) is properly before the Court. The claims in that motion are virtually identical to the claims raised in the present motion.

**B.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

**C.    Substantive Claims**

### 1. Violation of his Right to Remain Silent

In Ground Two of his November 2014 motion, Benitez-Salazar argues that his right to avoid self-incrimination was violated, but he does not state how, when, or by whom it was violated. As a result, his claim is conclusory and may not be considered, as conclusory allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional issue. See *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *see also United States v. Jones*, 614 F.2d 80 (5th Cir. 1980) (failure of movant to state specific facts, "is insufficient to state a constitutional claim."). Summary dismissal is appropriate for Benitez-Salazar's claim that his right against self-incrimination was violated.

### 2.      Ineffective Assistance of Counsel

Benitez-Salazar claims that as a deportable alien, he is treated differently by the BOP than United States citizens because he is ineligible for certain placements and programs.[3] He also complains that his counsel failed to raise the issue at sentencing, which could have secured a downward departure. In his later motion (D.E. 21) Benitez-Salazar claims that violation of his Equal Protection rights is a proper basis for a downward departure at sentencing.

#### a.   *Standard for ineffective assistance claims*

Generally, an ineffective assistance of counsel claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

---

[3]   The Court rejected that claim in Cause No. 2:04-CR-419-4 on the ground that it should have been brought pursuant to 28 U.S.C. § 2241 because it challenged the conditions of his confinement and should be addressed administratively by the BOP. The Court reached that result because of the manner in which the defendant raised the claim and his failure to specify the relief he sought. *See Gallegos-Hernandez v. United States*, 688 F.3d 190 (5th Cir. 2012) (Equal Protection claim considered pursuant to 28 U.S.C. § 2241). After reading both motions, it is clear that Benitez-Salazar seeks only to pursue his Equal Protection claims with his claim that counsel should have argued for a reduced sentence, which is cognizable in a § 2255 proceeding.

*United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under *Strickland*, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. *Glover v. United States*, 531 U.S. 198, 203 (2001); *United States v. Herrera*, 412 F.3d 577, 581 (2005). If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

b. *Counsel failed to argue Equal Protection violations at sentencing*

According to Benitez-Salazar, counsel failed to argue that violation of his equal protection rights should result in a lower sentence.

Although the Sentencing Guidelines permit a downward departure on the basis that the defendant is a deportable alien, such a departure is proper only in the extraordinary and "highly infrequent" case. *See United States v. Garay*, 235 F.3d 230, 232-33 & n.8 (5th Cir. 2000); *see also United States v. Nnanna*, 7 F.3d 420, 422 (5th Cir. 1993) (a bank robbery case in which the court held that "[c]ollateral consequences, such as the likelihood of deportation or ineligibility for more lenient conditions of imprisonment, that an alien may incur following a federal conviction are not a basis for downward departure").

5

In an immigration offense, a defendant's alienage has already been adequately taken into consideration and is not a permissible basis for downward departure. *Garay*, 235 F.3d at 233-34 (defendant's "status as deportable alien, as an inherent element of his crime, has already been considered by the [Sentencing] Commission in formulating the applicable guidelines"); *United States v. Foote*, 2001 WL 671465, *3-*4 (N.D. Tex. 2001) (rejecting argument by § 2255 movant that his counsel should have moved for downward departure); *cf. United States v. Maldonado*, 242 F.3d 1, 4-5 (1st Cir. 2001) ("a deportable alien who commits a crime is still within the 'heartland' of the guidelines;" "the common facts of a long sentence and likely deportation" do not by themselves make a case extraordinary such as to warrant a downward departure); *United States v. Jasso*, 460 Fed. App'x 432, *2 (5th Cir. 2012) (per curiam) (designated unpublished) ("A defendant's status as a deportable alien cannot serve as a ground for a downward departure if the defendant is sentenced for an immigration offense of which his alien status is an element, as is the case here.").

The Court was aware of Benitez-Salazar's status as a deportable alien, as well as the effect his status had in terms of BOP's policies and restrictions. The Court sentenced Benitez-Salazar below the guideline sentencing range of 70 to 87 months[4] in this case.

As to Benitez-Salazar's equal protection claim, the BOP's policies related to drug treatment and community-based placement ineligibility for INS detainees or deportable aliens have withstood equal protection challenges raised in other courts. *See*, *e.g.*, *McLean v. Crabtree*, 173 F.3d 1176, 118-85 (9th Cir. 1999) (BOP's rule prohibiting prisoners with INS detainers from receiving sentence

---

[4]   The PSR calculated Benitez-Salazar's offense level at 21, his criminal history category as V for a guideline range of 70 to 87 months imprisonment. He had also been voluntarily returned to Mexico on 11 other occasions that were not criminally charged. He admitted to two additional illegal reentries that were not prosecuted, but were also handled administratively, including a reentry three months before the June 2013 prosecution in this case.

reduction under substance abuse treatment statute does not violate due process or equal protection). Indeed, in several unpublished decisions, the Fifth Circuit has rejected equal protection claims regarding the BOP's treatment of non-citizens. *See, e.g.*, *Perez-Martinez v. United States*, 235 Fed. App'x 228, 229 (5th Cir. 2007) (unpublished) (affirming district court's dismissal of equal protection claim in § 2241 petition because petitioner did not show he was being treated differently than similarly-situated persons or that the restrictions on INS detainees' participation in the drug-treatment program are irrational, since they are based on a valid flight risk); *Bazuaye v. Tombone*, 275 F.3d 44, 2001 WL 1223857 (5th Cir. Oct. 5, 2001) (unpublished) (rejecting equal protection and due process claims of INS detainee who was ineligible for sentence reduction for drug treatment and ineligible for community-based placement).

Because Benitez-Salazar cannot show that the counsel's failure to make an equal protection argument would have made any difference in his sentence, he was not prejudiced by counsel's alleged failure. Accordingly, his ineffective assistance of counsel claim fails.

### c.  *Counsel failed to argue for a fast track downward departure*

Benitez-Salazar states that his voluntary waiver of his removal rights warrants a downward departure that counsel did not urge at sentencing. Construing his claim liberally, Benitez-Salazar appears to argue that he was entitled to fast track downward departure, and counsel was ineffective for his failure to urge that ground.

The Corpus Christi Division of the Southern District of Texas initiated a fast track program in 2012.[5] Fast track programs were developed to ease the burden of illegal reentry cases in districts

---

[5]  In January 2012, the Attorney General issued a Memorandum on Department Policy on Early Disposition or "Fast-Track Programs. http://www.justice.gov/dag/fast-track-program.pdf. That Memorandum reflected a change in policy to use fast track programs in all districts and to establish uniform guidelines for the use of the policy to become effective on March 1, 2012.  *Id*. The Memorandum was clear, "This policy does not, however, alter the criteria for prosecutorial discretion on whether to charge a particular defendant, nor does it require prosecuting additional cases."

where the sheer volume of such cases was overwhelming the capacity to prosecute violators. *United States v. Gomez–Herrera*, 523 F.3d 554, 559 (5th Cir.2008). The programs offer illegal reentry defendants various options, including reduced sentences, in exchange for their waiver of certain rights, including indictment by a grand jury, trial by jury, presentation of a pre-sentence investigation report, and appellate review of the sentence. *Id.* "The decision that a defendant be 'fast-tracked' is not made by the defendant but by the United States Attorney." *United States v. Martinez-Trujillo*, 468 F.3d 1266, 1269 (10th Cir. 2006).

Benitez-Salazar did not enter into a written plea agreement and did not agree to waive indictment, his right to appeal, or his right to collaterally challenge his sentence. He has not demonstrated his eligibility for the program. As a result, Benitez-Salazar has not shown any prejudice from counsel's failure to urge that he be sentenced pursuant to the fast track program.

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Benitez-Salazar has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  As to claims

---

*Id.* at p. 1.

that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

The Court finds that Benitez-Salazar cannot establish at least one of the *Slack* criteria. Accordingly, he is not entitled to a COA as to his claims.

## VI.  CONCLUSION

The Clerk is instructed to docket D.E. 119 from 2:04-CR-419 in this case. For the foregoing reasons, Benitez-Salazar's motions (D.E. 21, D.E. 22) are **DENIED** with prejudice. Additionally, he is **DENIED** a Certificate of Appealability.

It is so **ORDERED.**

**SIGNED** on this 2nd day of November, 2015.

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE